This is a boundary suit. The plaintiff and the defendant trace their titles to a common author.
Plaintiff alleges that the boundary line between the two estates has been wrongfully established, and that he desires to have the boundary definitely fixed as prescribed by law; that defendant caused to be erected, on or about January 30, 1939, a fence, at his expense, as a boundary line, in disregard of the provisions of Article 838 of the Civil Code; that the said fence encroaches and encloses a strip of land of approximately fifteen feet of his property to a ditch on the western side of said fence. He further alleges that he has endeavored to extra-judicially fix the boundary line between himself and defendant to no avail, the defendant contending that the fence constructed by him to be the true and correct boundary line. He therefore alleges that it becomes necessary that a surveyor be appointed to ascertain and fix the correct boundary, and that the fence so constructed by defendant be removed to the boundary line. His prayer is that a surveyor be appointed and sworn to inspect the premises, make a survey of the lands in controversy to ascertain their limits, to make a proces verbal of his work, in the presence of witnesses, and to file the same into court; that there be judgment in his favor, decreeing the boundary to be "A ditch on the upper side of the road, which road is on the western edge of plaintiff's property south of U.S. Highway No. 90, and a prolongation of the said ditch north of the said Highway, extending from the Bayou Teche to the railroad right-of-way," and ordering defendant to remove a fence, now encroaching upon his property approximately fifteen feet, to the said boundary line, together with all costs, including the fee of the surveyor appointed by the court.
By virtue thereof, on April 10, 1939, an order was entered appointing Mr. Theo F. Kramer, as surveyor, to be sworn, thereafter, to inspect the premises, to survey the same, and to report in writing to the court, in accordance with law.
Pursuant to this order, Mr. Kramer was sworn on April 29, 1939, and on the same day letters issued to him as such.
On May 1, 1939, pursuant to the order and qualification above referred to, Mr. Kramer issued notice to both parties litigant to be present on May 6, 1939, at which time he would "make a survey of the boundary in the suit to establish same".
It is presumed that on the day and date mentioned in the notice that is, May 6, 1939, Mr. Kramer made such a survey of the boundary in the suit to establish the line, for the reasons that on May 12, 1939, some six days thereafter, there was received and filed a report from the said surveyor in the following words: "Beginning at Point `B' shown on the attached map or plan, I measured 20 feet N. 63° W. along the Southern Pacific R.R. At this point an angle of 86° 45' was measured from the center of said railroad, and a line was established along said `Line Ditch'. At various intervals shown on the attached plan, wooden pegs were driven into the ground to mark the correct boundary line between Bert. D. Moresi and Louis A. Mendoza. Mr. W.Y. Kemper, Mr. B.D. Moresi and Mr. L.A. Mendoza were present."
After this report and map of the surveyor were filed defendant filed his answer, in which he admits that plaintiff's property adjoins his to the east, but denies that the boundary between the two estates "has been wrongfully established". He further denies that he caused the fence to be erected on January 30, 1939, in derogation of the true boundary line, and denies that it is now necessary to have a judicial fixing of the said boundary line in that his fence now rests on the boundary line as fixed by the common authors in title. In his answer, defendant avers that the said boundary line was fixed in an act of partition entered into by a Mr. Fay, plaintiff's ancestor in title, and a Mr. Webster and his wife, defendant's ancestor in title, to this effect — quoting from the act of partition: "The said Alexander T. Fay takes as his own undivided interest and ownership in and to said Plantation and lands, that certain portion of said Plantation and lands, all that portion thereof situated on the West side of said Bayou Teche, commencing at the dividing line of Aruns Sorrel and running up said Bayou to a line on a line with a ditch on the upper side of a road leading back to the line of lands of Mrs. Charles Pecot, said piece so taken by said Fay having a depth of thirty arpents and the remainder of said *Page 324 
lands taken by John N. Webster and wife having a depth of Forty arpents, the line between said continuation or extra depth of said lands and lands of Mrs. Charles Pecot, is to be the actual division and to be carried in a direct line to the Bayou Teche. * * *" That the said boundary line as established by the parties to the act is some thirty feet, more or less, to the east than that which as established by Mr. Kramer in his survey and reported to the court. In the alternative, defendant pleads the prescription of ten years acquirendi causa. In his prayer, defendant prays that the survey and line as established by Kramer be rejected, together with plaintiff's demand, and further prays that the boundary line be fixed and established in accordance with the act of partition "between A.T. Fay and John N. Webster and wife, that is, the line between the continuation or extra depth of the land accepted by John N. Webster and wife and the lands of Mrs. Charles Pecot, be decreed to be the actual, correct and legal boundary line and carried in a direct line to Bayou Teche."
Upon these issues, the case was tried, resulting in a judgment fixing the boundary line in accordance with the survey and report of the surveyor appointed by the court. Defendant has appealed.
Prior to and up to March 27, 1875, Alexander T. Fay and John N. Webster and wife owned, in indivision, a certain plantation, part of which was on the west side of Bayou Teche, in the Parish of St. Mary. That part on the west side of Bayou Teche having a front on the said Bayou, being the north, of twenty-three arpents, being bounded on the south by the property of Mrs. Charles Pecot and others, on the east by the lands of Aruns Sorrel and on the west by lands of Mrs. Charles Gravenberg. The said property, in accordance with the maps herein filed, was situated in Sections 38 and 68 of Tp. 13, S.R. 8 E.
On the said day and date supra, the said proprietors appeared before a notary public and partitioned the said property in the following manner — the pertinent parts thereof being:
"The said Alexander T. Fay, takes as his one undivided interest ownership in to said Plantation lands,
"That certain portion of said Plantation lands, all that portion thereof situated on the West side of said Bayou Teche, commencing at the dividing line of Aruns Sorrel and running up said Bayou to a line on a line with a ditch on the upper side of a Road leading back to the line of lands of Mrs. Charles Pecot, said piece so taken by said Fay, having a depth of thirty arpents, the remainder of said lands, taken by John M. Webster wife, having a depth of Forty arpents, the line between said continuation or extra depth of said lands, and lands of Mrs. Charles Pecot, is to be the actual division, and to be carried in a direct line to the Bayou Teche, * * *."
John N. Webster and his wife were to have the remainder thereof, that is, the west or upper part. Also in the said partition deed is found the following:
"It being well understood, that as the Canal for drainage purposes on the West side of said Bayou Teche as now located is on lands taken by said John N. Webster wife, the said Alexander T. Fay is to have the right of drainage into the same free 
undisturbed use of the same, he to assist in working keeping it open in proper order, * * *."
Both parties derive their titles from this partition, Mendoza, plaintiff, claiming from Fay, and Moresi, defendant, claiming from the Websters. Plaintiff's property is from the Southern Pacific Lines, north to the Bayou, while defendant's property extends from the paved Highway to the south beyond the Southern Pacific Lines to Section 28, and to the east of Sec. 69.
The plaintiff alleges, and it is not disputed, that a division line was agreed upon and established by the original owners of the plantation, as evidenced by the deed. It is the contention of the plaintiff that the line was wrongfully established and that the division line should be "a line on a line with a ditch on the upper side of a road leading back to a line of lands of Mrs. Charles Pecot", while it is the contention of the defendant that the actual division line is the continuation of the line separating the property of the former owners with that of Mrs. Charles Pecot in order to conform with the statement that the property of Fay was to have a depth of 30 arpents and that of the Websters to have a depth of 40 arpents, and that regardless of the fact that the section line was not mentioned, yet the fact remained that such was the intention of the contracting parties.
The question, as we view the case, is the proper interpretation of the act of partition relative to the division line. In so *Page 325 
doing we are to take the whole act and not merely a part thereof, and give such interpretation as will be a reasonable one.
Mr. Kramer, the civil engineer appointed by the court to inspect, survey, and make his report to the court in order to establish the boundary line between the two estates, supplemented his short report and testified as follows:
"I began a point approximately 7737 feet east of the east city limits of the town of Jeanerette, Louisiana, along the existing concrete highway — at this point I noticed on the west side of a plantation road, a ditch which could be plainly seen. Along the line of this ditch I noticed in several places traces of an old wire fence, which I estimated to be possibly 20 years old. On this ditch I placed in the center several range poles and averaged the alignment of these poles. Since this alignment and location was obstructed by many trees, and other obstacles it was necessary to transfer this line to a line 20 feet east, which line I will refer to as a `base' line, this base line was then extended in a southwesterly direction to the intersection with the line of the S.P. Railroad. At this point of intersection the deflection angle was measured and found to be 86 degrees and 45 minutes. From all maps available, I found that the true bearing of the S.P. Railroad is south 63 degrees east, therefore with an intersection angle of 86 degrees and 45 minutes the calculated true bearing of the base line was north 30 degrees 15 minutes East. This bearing I found coincides with the bearing shown on the property line between Fay and Webster. At the point of intersection with the Railroad and base line I measured S. 63 degrees East along the S.P. Railroad to approximately center of the Fay Canal, and found this distance to be 2958 feet. With the distance of the base line from the line ditch added to 2958 feet, I found the total distance between Fay Canal and the property line to be 2978 feet. This checked within 4 1/2 feet according to a map made by W.W. Johnson.
"I next proceeded to the point of beginning of the Highway and projected said base line north 30 degrees, 15 minutes east to the Bayou Teche. At a point 556.6, feet from the center line of existing concrete highway and on said base line I found an iron bar that was exactly 20 feet west of said base line. Inasmuch as this bar was exactly 20 feet west it coincided exactly with said line ditch mentioned previously. In other words, it appears to me that there are five (5) good reasons why this line which I established between Mr. Moresi and Mr. Mendoza is a true and correct line:
"1st. The appearance of a ditch on the upper side of a road.
"2nd. Signs of existing fences approximately within a few feet of the ditch.
"3rd. The bearing of this line ditch checks with the old maps showing the boundary line between Fay and Webster, namely North 30-1/4 feet east. The maps involving this property will show that to be true.
"4th. The distance between `line ditch' and Fay Canal as I found it checked with the map by W.W. Johnson to within a very few feet.
"5th. The existence of an iron bar on said property line has significance inasmuch as it coincided so perfectly with the survey."
On further examinations in chiefs and in cross-examinations, he testified that he had used a map made by a Mr. W.W. Johnson. He further states that he did not attempt to locate the dividing line between Aruns Sorrel and the Fay-Websters, being the east line of Fay-Websters plantation, nor did he attempt to locate the "Fay Canal". He assumed that the Fay Canal was on the division line, one-half owned by Sorrel and one-half by Fay-Websters. That he noticed the continuation of the road from Bayou Teche to the property formerly owned by Mrs. Charles Pecot, but did not survey or attempt to continue his boundary line any further. He further states that he did not take into consideration the other clauses as contained in the partition deed, merely taking into account that he was called upon to survey and establish "a line on a line etc.", he states "There were signs of this ditch in various places all the way from Bayou Teche to the Railroad (evidently meaning the Southern Pacific lines) but not a continuous ditch, but there were well defined lines of a ditch existing between those two properties." He further states that he did not attempt to prolong this ditch any further than the Southern Pacific, but admits that there was a ditch on the western side of the road to the property formerly belonging to Mrs. Pecot. He finally states that he cannot say definitely that the line he has established is the correct line. He further states that he made no effort to establish the section lines between Sections 38, 68 and 69 for the *Page 326 
reason that, in accordance with his views, he was not called to do so. He further states that if his boundary line would be extended south to the property formerly owned by Mrs. Pecot, that the drainage ditch referred to in the act of partition would be on the property formerly owned by Mr. Fay in contravention of the act of partition which acknowledged that such ditch was on the property of the Websters. He further admits that he had and used no government field notes, but based his survey and conclusions on a map of survey of W.W. Johnson.
Plaintiff filed in evidence a sheriff deed wherein the property of Fay was seized and sold on June 13, 1891, to Donelson Caffery, Jr. (one of plaintiff's ancestors in title), being the same property which was allocated by the act of partition of date of March 29, 1875, the pertinent description of the property involved in this suit being given as bounded on the west by the property of the Websters, on the east by the lands of A. Sorrel, in the rear, that is, south, by the lands of the Estate of Mrs. Charles Pecot (and, of course, on the north by Bayou Teche). It is to be noted that, in this deed, the line fixing these boundaries did not call for any extension of the western limits of the Fay property any further west than that which the Pecot property extended, which was the dividing line between Sections 69 and 38.
The next and only lay witness offered by the plaintiff is himself. His testimony is that he acquired the property to the east of plaintiff from the First National Bank of Jeanerette, which had acquired it from his father, J.P. Mendoza, who has acquired it from Donelson Caffery, Jr., and who had acquired it by virtue of the seizure and sale supra, in other words, a chain of his title. In effect, his testimony is that his father purchased from Mr. Caffery, in 1893, the property to the east of defendant and that a surveyor delivered unto his father the property; that immediately after the purchase his father enclosed the same by putting a fence around a shallow ditch to the railroad tract (presumably from Bayou Teche to the said railroad, which is the Southern Pacific lines), and that his father considered this to be the boundary line between the two estates. He further states that there "was apparently a road leading down to the Bayou". That in 1884 (while the property was belonging to Mr. Fay) a Mr. Conrad rented a site on the property to install a rice irrigation plant and that the irrigation canal was dug on the road, cutting across to the east side of the road to the public road, thence across the public road on the east side thereof to make "a flume ditch".
The defendant offered certain documents to show his title from the Websters and that his property is bounded on the east by that of Fay and of his vendees in title, that is, plaintiff. He then offered the testimony of Mr. George Roger, a man of 71 years of age at the time of trial. This witness testified to the effect that he and a Mr. Poirson were engaged in the cultivation of rice some twenty years prior to the filing of this suit on the property formerly belonging to Mrs. Charles Pecot, and a portion of the property belonging to the Websters, now belonging to defendant. That they leased from the father of the plaintiff, the then owner of the property to the east of defendant, the privilege of using a ditch, eighteen feet to the east side of the road leading from Bayou Teche to the Pecot property, evidently for rice irrigation purposes. That this side road was on the property now claimed by the defendant. That, while cultivating rice, the property to the west and south of this road, he used the said road from the public road, up to and across the railroad tracks, to the property formerly belonging to Mrs. Pecot, without interference and without any protest from the ancestors in title of plaintiff, or any one claiming adverse possession thereof. He further states that he is well conversant with the alleged or supposed ditch which Mr. Kramer used as a line, and states that the ditch, if any, was so small that he plowed it and destroyed it in the making of a rice crop. He further states that there were few trees showing the markings of a hog fence, the fence being constructed by a Dr. Boykin, a former owner of defendant's property, for the purpose of raising hogs, a fact of which he was cognizant. He further states that there was a ditch on the side of the road leading to the property of Mrs. Charles Pecot, now known as the Providence Plantation, which, in accordance with the township map herein filed, is located in Section 69 and which said section is to the east of Section 38, the property of defendant, and to the south of Section 68, in which section lies plaintiff's property. He further states that he once owned a part of the Fay property to the east of plaintiff's property, and that the Fay Canal was altogether on the Fay property, *Page 327 
the eastern boundary thereof being some twelve feet from the line separating the property of Arun Sorrel and Mr. Fay. He admits, however, that there was a road leading from the Bayou to Mrs. Pecot's property; and that from the public road in the direction of the railroad tracks, for some 600 feet, there was a fence on the west side of the road, but he is certain that there were no ditches; that this fence was some thirty feet from the flume ditch which they (he and his partner) had built, and that he destroyed this fence without protest from any one.
Defendant testified that the road leading from the bayou, and across the paved road leading towards the railroad and the property formerly belonging to Mrs. Pecot, was plowed from the paved road to the railroad right of way by the plaintiff some time in the year 1938. That he, defendant, constructed a fence in the middle of the road in 1939, by virtue of a survey made for the purpose of establishing the boundary by a Mr. Kemper, C.E. That prior thereto there were no visible means of determining the boundary line. He claims the true line to be that of the flume ditch, which, in accordance with the testimony of Mr. Roger, was a ditch on the east side of this road.
Mr. Walter Y. Kemper, C.E., the one employed by defendant in 1939 to survey and fix the boundary line, was present when Mr. Kramer surveyed and fixed the line on May 6, 1939. He testified that, in accordance with Mr. Kramer's testimony and his map which he submitted to the court, if the line as fixed by Mr. Kramer would be extended south, beyond the Southern Pacific railroad and up to and beyond the property formerly belonging to Mrs. Pecot, that that line would then be entirely west of the road referred to in the act of partition and to the west of Mrs. Pecot's property, and that the drainage ditch or canal referred to in the act of partition would be on the Fay property rather than on the Webster property. This witness gives our reasons for holding that you just cannot take a portion of the description of the line and leave the remainder. He states:
"We cannot confine this reading just to that portion of the description which said that the lands run up said Bayou Teche to a line on a line with a ditch, and stop there. We must specifically identify that road as the road that runs all the way back to the property formerly owned by Mrs. Charles Pecot. Then when it is stated that the lands taken by Fay should have a depth of 30 arpents and that taken by Webster 40 arpents, a reference to the Township plat shows that specifically indicates the line as being a Section line which in Township 13, S.R. 8 East is between Sections 68, 69 and 37 on the east and Sections 38, 28 and 33 on the west. * * * On the other hand ditches made sixty-five years ago can be entirely eliminated as well as road — Section lines cannot be eliminated, therefore it is my opinion that the contest today is the section line between Sections 38 and 68, T. 13, S.R. 8 East."
This witness further testified that he had had occasions to survey and mark the Fay Canal and also fix the division between the Sorrel and Fay properties and that the Fay Canal was some thirty feet inside and on the Fay property. In this he is corroborated by Mr. Roger, and not contradicted by Mr. Kramer. Mr. Kramer only assumed that the canal was on the line, being one-half to each of the adjoining proprietors.
From the preceding remarks, we find ourselves unable to definitely fix the boundary line between these two properties. Mr. Kramer did not give us a map and report showing: the adjoining properties, that is, the properties mentioned in the partition, viz: Arun Sorrel, Mrs. Pecot, and Mrs. Gravenberg; the location of the Fay Canal and width; the location of the drainage ditch referred to in the act of partition; the location of the road referred to in the act of partition; the extension of the ditch or ditches abutting the said road to the property of Mrs. Pecot; the projection of the line dividing the property of Mrs. Pecot from that of the Fay and Websters north to Bayou Teche; the location of the section line between Sections 68, 69 and 38, to be established in accordance with government field notes, and its effect thereof relative to the properties of plaintiff and defendant; the location of the fence constructed by defendant; a copy of the Johnson map and such other maps he may have used in his survey and the authenticity thereof, and such other information he may have had relative to the bearing of the Fay and Websters property as referred to in his third reason for the fixation of the line as he did; also showing the depth of 30 and 40 arpents as referred to in the act of partition relative to the property of Mrs. Pecot. He *Page 328 
should also have given us a map showing the property in dispute between these litigants; all, thus requiring a re-survey of the properties affected by the present suit.
Of course, it stands to reason that the defendant may supplement his evidence by a surveyor of his own choice, with maps and evidence, and any other competent evidence in order to afford this court to properly fix the true boundary line.
Thus, we feel that the record presented herein is not sufficient to properly determine and fix the boundary line between these two continuous estates. In the interest of justice and exercising our discretion as given to us under Code of Practice, Article 906, we deem it best to reverse the judgment rendered, and to remand the case for further evidence in accordance with our views herein expressed.
For these reasons assigned, it is ordered that the judgment appealed from is hereby set aside and reversed and that this case is remanded to the District Court to be proceeded with according to law and the views herein expressed, at the cost of appellee in this court, all other costs to await the final termination of the case.
Le BLANC and OTT, JJ., concur.